AO 93 (Rev. 11/13) Search and Seizure Warrant



# UNITED STATES DISTRICT COURT
### for the
District of Arizona

| | | |
|---|---|---|
| In the Matter of the | ) | |
| | ) | |
| Use of a Cell-Site Simulator to Identify the Cellular | ) | Case No.  20 - 9324 MB |
| Device Used by Juan Quintero Ojeda, a Hispanic male | ) | |
| born on November 17, 1994. | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before  11 - 24 - 2020 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  any US Magistrate Judge on duty in the Phoenix Division .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for  30  days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  11/10/2020  1:20 pm          _____
                                                                                                    *Judge's signature*

City and state:  Phoenix, AZ                          HONORABLE EILEEN S. WILLETT
                                                                                    *Printed name and title*

### ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that Juan QUINTERO OJEDA is present.

This technique may be used at the following locations:

1. A residential property located at 7817 W. Fairmont Avenue, Phoenix, Arizona. This location is believed to a primary address for Juan QUINTERO OJEDA as it is listed as his address on DMV records and is the registered address for his vehicle

2. 7205 W McDowell Rd, Phoenix, Arizona. This location is believed to be an apartment address visited by Juan QUINTERO OJEDA. Agents observed QUINTERO OJEDA return to this address after a suspected drug deal.

3. The commuting areas surrounding these locations.

4. Public places and locations if and when Juan QUINTERO OJEDA is positively identified.

## ATTACHMENT B

The "Target Cellular Device" is the cellular device or devices carried by Juan QUINTERO OJEDA.  Pursuant to an investigation for a violation of 21 U.S.C. §§ 841 and 846, this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices.  Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

2

AO 106 (Rev. 04/10)  Application for a Search Warrant



# UNITED STATES DISTRICT COURT

## for the
District of Arizona

| | |
|---|---|
| In the Matter of the | ) |
| | ) |
| Use of a Cell-Site Simulator to Identify the Cellular Device Used by Juan Quintero Ojeda, a Hispanic male, born on November 17, 1994. | )  Case No.  20 - 9324 MB |
| | ) |
| | ) |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Arizona _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841 | Possession with the intent to distribute a controlled substance |
| 21 U.S.C. Section 846 | Conspiracy to distribute a controlled substance |

The application is based on these facts:
See Affidavit. In addition, to ensure compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, AUSA Seth T. Goertz certifies that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by Homeland Security Investigations.

☐ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed and certified by

AUSA  Seth T. Goertz

MICAH C MAULDEN  Digitally signed by MICAH C MAULDEN
Date: 2020.11.10 12:45:58 -07'00'

*Applicant's signature*

Micah Maulden, Special Agent, HSI
*Printed name and title*

Subscribed and sworn to telephonically.

Date: 11/10/2020  1:20 pm

City and state:  Phoenix, Az

*Judge's signature*

HONORABLE EILEEN S. WILLETT
*Printed name and title*

**ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that Juan QUINTERO OJEDA is present.

This technique may be used at the following locations:

1. A residential property located at 7817 W. Fairmont Avenue, Phoenix, Arizona. This location is believed to a primary address for Juan QUINTERO OJEDA as it is listed as his address on DMV records and is the registered address for his vehicle

2. 7205 W McDowell Rd, Phoenix, Arizona. This location is believed to be an apartment address visited by Juan QUINTERO OJEDA. Agents observed QUINTERO OJEDA return to this address after a suspected drug deal.

3. The commuting areas surrounding these locations.

4. Public places and locations if and when Juan QUINTERO OJEDA is positively identified.

## **ATTACHMENT B**

The "Target Cellular Device" is the cellular device or devices carried by Juan QUINTERO OJEDA.  Pursuant to an investigation for a violation of 21 U.S.C. §§ 841 and 846, this warrant authorizes the officers to whom it is directed to identify the Target Cellular Device by collecting radio signals, including the unique identifiers, emitted by the Target Cellular Device and other cellular devices in its vicinity for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Cellular Device, except to identify the Target Cellular Device and distinguish it from the other cellular devices.  Once investigators ascertain the identity of the Target Cellular Device, they will end the collection, and any information collected concerning cellular devices other than the Target Cellular Device will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property.  The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).

2

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Micah Maulden, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by Juan QUINTERO OJEDA, a Hispanic male born on November 17, 1994 and approximately twenty-five years old (the "Target Cellular Device"), described in Attachment A.

2.     I am a Special Agent with Homeland Security Investigations ("HSI") and have been since August of 2018.  Over this period, I have conducted numerous criminal investigations into violations of federal and state laws including narcotics trafficking, human and sex trafficking, violent gang offenses, weapons trafficking, money laundering, counterfeit currency, and organized criminal activity.   These investigations required various investigative techniques; such as, drafting warrants and corresponding court orders, subpoenas, and Title III electronic surveillance.  I am familiar with and have experience conducting physical and electronic surveillance, recruiting and managing confidential sources, and conducting interviews.

3.     Prior to becoming a Special Agent, I obtained a Master of Divinity in Religious and Theological Studies from Covenant Theological Seminary (2014) and a Bachelor of Arts in International Studies from the University of Arkansas at Little Rock (2009). I was employed by the University of Arkansas Police Department, the University of Arkansas at Little Rock Police Department, and Conway, Arkansas Police Department as a Police Officer for approximately 5 years.  I was also an Intelligence Liaison Officer with the Arkansas State Fusion Center and a Police Chaplain.  I have participated in criminal investigations, which have resulted in convictions in both state and federal courts along with the seizure of controlled substances, firearms, and proceeds from illegal

activities. In addition to the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, GA, I have completed numerous specialized training programs involving narcotics smuggling, human smuggling, weapons smuggling, sex trafficking, undercover operations, and electronic surveillance.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district because the user of the Target Cellular Device, Juan QUINTERO OJEDA, spends most of his time in this district. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by Juan QUINTERO OJEDA. There is also probable cause to believe that the identity of the Target Cellular Device will constitute evidence of those criminal violations. In addition, in order to obtain additional evidence relating to the Target Cellular Device, its user, and the criminal violations under investigation, law enforcement must first identify the Target Cellular Device. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

7.      Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as

2

Rule 41.  See 18 U.S.C. §§ 3121-3127.  This warrant therefore includes all the information required to be included in a pen register order.  See 18 U.S.C. § 3123(b)(1).

## **PROBABLE CAUSE**

8.      In November 2019, HSI special agents assigned to the Casa Grande, Arizona field office began investigating a Mexican drug smuggling organization with ties to the Phoenix, Arizona area.  Throughout the course of this investigation, agents identified a Phoenix-based drug distribution cell, which Elder ENRIQUEZ-RAMOS is currently leading.  Investigation into ENRIQUEZ-RAMOS has already led to the arrest and indictment of several individuals and the seizure of over 60 pounds of methamphetamine, more than 1500 fentanyl pills, and several firearms.

9.      On September 9, 2020, HSI agents received authorization to conduct a court ordered wiretap on one of ENRIQUEZ-RAMOS's telephones, telephone number 602-752-4446 (Warrant number WT-20-00001-PHX-DWL, authorized by the Honorable Dominic W. Lanza United States District Judge for the District of Arizona.).

10.      Intercepts and corresponding cell phone toll analysis have revealed that ENRIQUEZ-RAMOS utilizes multiple sources to obtain a supply of drugs.  Investigators further believe that Juan QUINTERO OJEDA is one of his sources of supply.

11.      Investigators first identified QUINTERO OJEDA after he sold 1000 fentanyl pills to an HSI undercover agent ("UC") as part of a separate investigation.  There, the UC initially arranged to purchase 1,000 fentanyl pills from a target in Mexico and the target referred the UC to QUINTERO OJEDA.

12.      The UC then communicated with QUINTERO OJEDA using telephone number 602-654-8199 to facilitate the purchase in Phoenix, Arizona.

13.      Eventually, the UC and QUINTERO OJEDA agreed to meet at 7333 W. McDowell Road in Phoenix, AZ, on August 14, 2020.  And on August 14, two HSI undercover agents purchased approximately 1,000 fentanyl pills from QUINTERO OJEDA in exchange for $2,300.

3

14.     Prior to the purchase, HSI agents observed QUINTERO OJEDA arrive at the meet location while driving a white Chevrolet Impala, which displayed Arizona license plate number HAA9AVA and was registered to QUINTERO OJEDA.   HSI agents confirmed QUINTERO OJEDA's identity after positively matching him to his driver's license photograph.

15.     Approximately one month later, intercepted calls and toll analysis for ENRIQUEZ-RAMOS indicated that he was using QUINTERO OJEDA as a source of supply for his own drug distribution cell.

16.     For instance, on September 27, 2020 according to intercepted communications, ENRIQUEZ-RAMOS received a request to purchase a large amount of pills, but ENRIQUEZ-RAMOS responded that his supply was low and that he need to get more pills first:

CUSTOMER:  Hey Jr this is sinn what can you do for me for the boat[?]

17.     Based upon my training and experience, as well as conversations with other law enforcement officers, I believe that this customer contacted ELDER to purchase a large amount of pills because "boat" is a common slang term used to refer to a quantity of 1,000 pills.

18.     Later that day, the customer again contacted ELDER and requested to purchase a large amount of narcotics in pill form:

ELDER: Hey.

CUSTOMER: Yey, yey.

ELDER: What's up man?

CUSTOMER: What's up? What's up? Hey, I had text you.

ELDER: Yeah.

CUSTOMER: You seen it?

ELDER: But right- yeah, yeah. Right now... I don't have that many. Right now I'm trying to re-up again. But once I do.  I'll let you know.

CUSTOMER: Okay.

ELDER: All right.

CUSTOMER: All right, bye.

ELDER: All right. Cool, man. Later.

CUSTOMER: Yeap.[1]

19.     Over the next two days, on September 28 and September 29, 2020, toll analysis between ENRIQUEZ RAMOS[2] and QUINTERO OJEDA via 602-654-8199 (the same number the UC used to communicate with QUINTERO OJEDA) indicates that the two communicated on multiple occasions.  Each of these communications corresponded to intercepted calls in which ELDER told several customers that he was in the process of replenishing his drug supply.

20.     Then, on September 29, 2020, intercepted communications indicated that ENRIQUEZ-RAMOS was going to replenish his drug supply later that day.  As a result, HSI investigators set up surveillance on ENRIQUEZ-RAMOS and observed him as he drove to a parking lot located at the intersection 75th Avenue and Indian School Road in Phoenix, AZ.  Once there, HSI investigators observed ENRIQUEZ-RAMOS park next to a white Chevrolet Impala displaying Arizona vehicle license HAA9AVA (the same vehicle QUINTERO OJEDA drove).

21.     Agents then observed ENRIQUEZ-RAMOS enter the Chevrolet Impala, remain for a short time, and return to his vehicle.  After the meeting, HSI investigators

---

[1] This conversation occurred in the Spanish language and was translated by a certified wire translator.

[2] This toll analysis relates a second phone that ENRIQUEZ-RAMOS was using, which was not subject to the wiretap investigation.

maintained close surveillance on the Chevrolet Impala and tracked him as he drove to an apartment complex located 7205 W McDowell Rd, Phoenix, Arizona. After arriving at the apartment complex, HSI agents visually confirmed QUINTERO OJEDA's identity after he exited the driver's side door of the vehicle (he was the vehicle's sole occupant).

22.   After this meeting, intercepted calls indicate that ENRIQUEZ-RAMOS then delivered pills to several of his customers.

23.   Based upon my training and experience, conversations with other law enforcement officers, and my knowledge of this investigation, I believe that ENRIQUEZ-RAMOS purchased pills in a distribution quantity from QUINTERO OJEDA when they met on September 29, 2020.

24.   Following this meeting, HSI agents obtained subscriber information and toll analysis for the cellphone QUINTERO OJEDA used to communicate with the UC and which toll records indicate he also used to communicate with ENRIQUEZ-RAMOS (602-654-8199). According to subscriber information, service was initiated on August 2, 2020, and that it ceased on October 2, 2020, and is no longer in use. Based upon my training and experience, as well as conversations with other law enforcement personnel, I believe that the short subscriber duration is consistent with large-volume drug distributors who will often cycle through multiple phones over a short period of time in order to thwart law enforcement. As a result, I believe that identification of the phone(s) that QUINTERO OJEDA is currently using will aid this investigation by revealing one of ELDER's potential co-conspirators along with additional evidence of drug trafficking.

## MANNER OF EXECUTION

25.   In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower

6

that is routing its communication.   These signals include a cellular device's unique identifiers.

26.   To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Device, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers.   The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others.   Law enforcement will use this investigative device when they have reason to believe Juan QUINTERO OJEDA is present.   Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Device when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Device, as only the Target Cellular Device's unique identifiers will be present in all or nearly all locations.   Once investigators ascertain the identity of the Target Cellular Device, they will cease using the investigative technique.   Because there is probable cause to determine the identity of the Target Cellular Device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Device.

27.   The investigative device may interrupt cellular service of cellular devices within its immediate vicinity.   Any service disruption will be brief and temporary, and all operations will attempt to limit the interference cellular devices.   Once law enforcement has identified the Target Cellular Device, it will delete all information concerning non-targeted cellular devices.   Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the Target Cellular Device from all other devices.

## AUTHORIZATION REQUEST

28.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.  The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

29.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  There is reasonable necessity for the use of the technique described above, for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

30.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the Target Cellular Device outside of daytime hours.

///


///


///

8

31.   A search warrant may not be legally necessary to compel the investigative technique described herein.   Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

MICAH C
MAULDEN

Digitally signed by MICAH C
MAULDEN
Date: 2020.11.10 12:47:27 -07'00'

Micah Maulden, Special Agent
Homeland Security Investigations

Subscribed and sworn to telephonically on this  10  day of November, 2020.

HONORABLE EILEEN S. WILLETT
UNITED STATES MAGISTRATE JUDGE

9